In re LEGEND HOMES, INC., Debtor.

RAY LUMBER COMPANY, Movant,

v.

LEGEND HOMES, INC., Debtor.

Bankruptcy No. 85–2260–PHX–SSC.

United States Bankruptcy Court,
D. Arizona.

Jan. 12, 1987.

Brian N. Spector, Jennings, Strouss & Salmon, Phoenix, Ariz., for Ray Lumber Co.

Donald Powell, Phoenix, Ariz., for debtor.

## OPINION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

On or about August 1, 1985, the Debtor, Legend Homes, Inc. (hereinafter "Legend Homes" or Debtor) filed for bankruptcy relief under Title 11, United States Code, Chapter 11. The Debtor is reportedly in the business of constructing and selling single-family homes. On or about June 17, 1986, a creditor of the estate, Ray Lumber Company (hereinafter "Ray Lumber") filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(c) [sic]. Ray Lumber seeks relief from the automatic stay to proceed against a cash deposit held by the Arizona State Registrar of Contractors pursuant to A.R.S. § 32–1152.[1]

---

**1.** The relevant provisions of the statute are as follows:

"A. Before granting an original contractor's license the registrar shall require of the appli-

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(1). Resolution of this matter constitutes a core proceeding as defined by 28 U.S.C. § 157(b)(2)(G).

Pursuant to 11 U.S.C. § 362(e), a preliminary hearing on the motion for relief from the automatic stay was held before this Court on July 9, 1986. At that hearing the parties agreed that there were no factual issues in dispute and that the propriety of relief was strictly a legal issue. The Court notified the parties of a briefing schedule, and oral argument was heard on October 24, 1986.

The legal issues for this Court's consideration have been delineated as follows:

I. Whether cash deposited with the Arizona Registrar of Contractors pursuant to A.R.S. § 32–1152 is property of the estate under Section 541 of the Bankruptcy Code.

II. Whether claimants under Arizona law may be placed in a separate class and paid pro rata pursuant to a plan of reorganization under the Bankruptcy Code.

## DISCUSSION

■ In support of its request for relief, Ray Lumber argued as to the first issue that the cash deposit held by the Arizona Registrar of Contractors was not property of the estate as defined by 11 U.S.C. § 541. Ray Lumber argued that under Arizona law, money placed on deposit with the Registrar of Contractors was money held in trust for a statutorily defined class of creditors. A.R.S. § 32–1152. In support of its argument, Ray Lumber relied on the case, *In re: Lenk*, 48 B.R. 867 (W.D.Wis.1985).[2] In *Lenk*, the Debtor's son was involved in an accident while driving an uninsured motor vehicle. Pursuant to the Wisconsin Financial Responsibility Law, the Debtor had placed on deposit with the State Department of Transportation cash in the amount of $13,250. As further support for the requested relief, Ray Lumber also cited this Court to the Legislative History of Section 541 of the Bankruptcy Code. Ray Lumber contended that Congress never intended to include in the concept of property of the estate, property held in state-created statutory trusts.[3]

In response to Ray Lumber's arguments, the Debtor countered that the law of this Circuit provided that cash deposited with the Arizona Registrar of Contractors, pursuant to A.R.S. § 32–1152, was property of the estate as defined by 11 U.S.C. § 541. *Kennedy v. Powell*, 366 F.2d 346 (9th Cir.

cant a surety bond in a form acceptable to the registrar or a cash deposit as provided in this section. No contractor's license may be renewed unless the applicant's surety bond or cash deposit is in full force and effect.

... E. ... The person seeking recovery from the bond or cash deposit shall maintain an action at law against the contractor if claiming against the cash deposit or against the contractor and surety if claiming against the surety bond.... The surety bond or cash deposit shall be subject to claims until the full amount thereof is exhausted.... The surety bond or cash deposit shall be continuous in form and shall be conditioned so that the total aggregate liability of the surety or cash deposit for all claims, including reasonable attorney's fees, shall be limited to the face amount of the surety bond or cash deposit irrespective of the number of years the bond or cash deposit is in force.... If more than one cash deposit exists, the judgment against the contractor shall state which cash deposit shall be used to satisfy the judgment. A certified copy of the judgment shall then be filed with the state treasurer and such judgment shall specify that it may be satisfied from the contractor's cash deposit. Priority for payment shall be based upon the time of filing with the state treasurer. Upon receipt of a certified copy of the judgment, the state treasurer may authorize payment from the cash deposit of the amount claimed or of whatever lesser amount remains on file. On the day of payment the state treasurer shall give written notice of such payment to the registrar of contractors. In any action against a cash deposit, the claimant, at the time of filing suit, may notify the registrar in writing of the action against the cash deposit, but shall not name as a defendant in the action the registrar, the treasurer, or the state. Failure to so notify the registrar at the time of filing suit may result in the cash deposit being withdrawn by the licensee prior to judgment pursuant to subsection D of this section."

2. The District Court for the Western District of Wisconsin affirmed the decision and order of the Bankruptcy Court.

3. Movant's Memorandum in Support of Motion for Relief from Stay, Page 3.

1966). Debtor urged that for the purposes of determining property of the bankruptcy estate, the Ninth Circuit had previously distinguished between cash deposits and surety bonds, with only the former being property of the estate. It was undisputed by the parties herein that Legend Homes had deposited cash.

In reply Ray Lumber urged this Court to find that *Kennedy* was not controlling, inasmuch as the court in *Kennedy* had relied on property of the estate as defined under the Bankruptcy Act of 1898. Ray Lumber acknowledged in oral argument that this Circuit did make a distinction between cash deposits and surety bonds, and argued that this Court should no longer make this distinction in light of the redefinition of "property" under the Bankruptcy Code. Ray Lumber asserted that the Ninth Circuit's distinction based on whether cash or a surety bond was posted defeated the Arizona State Legislature's intent to provide special protection for the statutorily defined class of creditors.

In rendering its decision, this Court initially notes that neither side referred this Court to the Ninth Circuit decision of *Butler v. Pacific National Insurance Compa-ny*, 375 F.2d 518 (9th Cir.1967). At oral argument, this Court asked counsel to argue whether said decision was not dispositive of the first legal issue presented. Although *Butler* was decided under the Bankruptcy Act and under a different provision of Arizona law, the similarities of the subject Arizona statutory provision and the one in *Butler*, in conjunction with the fact that in *Butler*, cash also had been deposited as required under State law (rather than a surety bond), merited analysis by this Court.

Pursuant to A.R.S. § 34–221,[4] the debtor in *Butler* deposited cash with the State of Arizona as a part of the statutory scheme involving highway contractors. At the time the debtor filed its petition under the Bankruptcy Act, the State held approximately $21,500 in cash. The debtor's surety company, Pacific National Insurance Company, had made claim to the State for payment of said funds in light of the fact that the surety was co-liable with the debtor for payment to the claimants who were to benefit pursuant to the statutory scheme. The Bankruptcy Court found that the cash held by the State of Arizona was property of the bankruptcy estate. The District Court for the District of Arizona

---

4. This section of the Arizona statute provides in pertinent part:

"A. The agent shall enter into a contract with the lowest responsible bidder whose proposal is satisfactory, the terms of which shall include the following items:

... 3. Ten percent of all estimates shall be retained by the agent as a guarantee for complete performance of the contract, to be paid to the contractor within sixty days after completion or filing notice of completion of the contract. In lieu of the retention provided in this paragraph ... of this subsection, the agent shall, at the option of the contractor, accept as a substitute an assignment of time certificates of deposit of banks licensed by this state, securities of or guaranteed by the United States of America, securities of this state, securities of counties, municipalities and school districts within this state or shares of savings and loan institutions authorized to transact business in this state, in an amount equal to ten percent of all estimates which shall be retained by the agent as a guarantee for complete performance of the contract. In the event the agent accepts substitute security as described in this paragraph for the ten percent retention, the contractor shall be

entitled to all interest or income earned by such security and all such security in lieu of retention shall be returned to the contractor by the agent within sixty days after final completion and acceptance of all material, equipment and work covered by the contract if the contractor has furnished the agent satisfactory receipts for all labor and material billed and waivers of liens from any and all persons holding claims against the work. In no event shall the agent accept a time certificate of deposit of a bank or shares of a savings and loan institution in lieu of the retention specified unless accompanied by a signed and acknowledged waiver of the bank or savings and loan association of any right or power to setoff against either the agent or the contractor in relationship to the certificates or shares assigned.

4. In any instance where the agent has accepted substitute security as provided in paragraph 3 of this subsection, any subcontractor undertaking to perform any part of such public work shall be entitled to provide substitute security to the contractor upon terms and conditions similar to those described in paragraph 3, and such security shall be in lieu of any retention under the subcontract ..."

reversed the Bankruptcy Court. On appeal, the Ninth Circuit reversed the District Court of Arizona, and affirmed the Bankruptcy Court's holding. The Ninth Circuit found that the State statute was designed to protect a certain class of claimants and that the purpose of that statute was to recognize a priority in such persons to that fund of money.

Initially, the Ninth Circuit in *Kennedy* found that the trustee in bankruptcy had acquired a paramount interest in the cash deposit, as a result of the debtor's pre-petition residual interest in the deposit under State law. Therefore, the trustee's claim to return of the cash from the State of Arizona was predicated on the interest vested in the trustee by operation of law as of the date of the filing of the bankruptcy petition. The *Butler* court expanded the parameters of the *Kennedy* decision by not only permitting the trustee to recover the cash deposit from the State of Arizona, but directing the trustee to distribute pro rata the cash deposit to only those creditors who were to benefit as prescribed by Arizona law.

In view of this authority and the doctrine of *stare decisis*, this Court remains unconvinced that the revision in the Bankruptcy Code of what interests or assets of the debtor become property of the estate should necessarily lead to a different result than the decisions of the *Butler* and *Kennedy* courts.

Moreover, this Court notes that the Legislative History and comments concerning 11 U.S.C. § 541 indicate that the definition of "property of the estate" under the Bankruptcy Code is more expansive than that under the Bankruptcy Act.[5]

The Court notes with interest the constructive trust argument proffered by the movant, Ray Lumber. Although the Bankruptcy Court in *In re: Lenk, supra,* cited no Wisconsin Legislative History or case law for the proposition, the Court stated that it was the intent of the Wisconsin statutory scheme to create a constructive trust for a specific class of claimants; i.e.,

those individuals who were injured by uninsured motorists. To effectuate the presumed intent of the Statute, the Bankruptcy Court reasoned that the uninsured motorist could no longer have a residual or beneficial interest in any deposit made with the Wisconsin State Department of Transportation. However, the *Lenk* decision is merely that Court's interpretation of the presumed intent of the Wisconsin Legislature.

This Court notes that laws of the State of Arizona are similar to those of Wisconsin concerning the statutory scheme providing for the bonding of contractors; and although Ray Lumber has provided this Court with some insight into the legislative intent of the State of Wisconsin, Ray Lumber has provided this Court with no evidence regarding the legislative intent of the State of Arizona in enacting the statutory scheme concerning contractors. This Court has no basis in law or fact to assume that the legislative intent of Arizona was identical to that of Wisconsin for the purposes of legal analysis, so that this Court may find that a constructive trust is created under the statutory scheme concerning contractors as it is in Wisconsin.

Assuming *arguendo* that Arizona law, like that of Wisconsin, creates a "constructive trust" for a statutorily defined class of claimants, relief in the form requested by this Movant may still be inappropriate. In this jurisdiction a constructive trust is "a remedial device created by courts of equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Arm, Inc. v. Terrazas,* 24 Ariz. App. 441, 539 P.2d 915, 916 (App.1975). Under this theory, those funds currently held by the Arizona State Registrar of Contractors constitute a property interest justly belonging to the class of claimants, not just one claimant. Applying the "constructive trust" theory, the funds should be distributed pro rata to all of the members of the class of claimants eligible for pay-

5. 4 COLLIER ON BANKRUPTCY § 541.06, pp.    541-26 to 541-29 (15th ed. 1986).

ment under the statutory scheme. This conclusion is consonant with the Ninth Circuit's holding in *Butler, supra.*

This Court's decision is also consistent with that of other Circuits. In *Georgia Pacific Corp. v. Sigma Service Corp.,*[6] the Fifth Circuit stated:

"Even if all or part of this sum were subject to a 'constructive trust' in favor of Dura-Wood, Foster and other suppliers to [debtor], nevertheless, at the least, [debtor] had a 'legal' interest in the property so impressed, which was thus property of the estate [§ 541(a)(1)], required to be turned over to it [§ 542(a), (b)] subject to the bankruptcy court's power to recognize the suppliers' equitable interest [§ 541(d)] ..." *Id.* at 967–968.

The conclusion reached by this Court must necessarily be the same whether the Debtor is proceeding under the Bankruptcy Act or Code.

An ancillary legal issue is whether the requirements of *Kennedy* and *Butler* dictate that the claimants under Arizona law should be treated as a class under a plan of reorganization or if the funds deposited with the Arizona Registrar of Contractors should be distributed for the benefit of *all* unsecured creditors of the Debtor, and not just the statutorily protected class of claimants. Pursuant to 11 U.S.C. § 1122(a), a Debtor operating in Chapter 11 may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. As a result of this provision, Congress and the Code provide for different treatment above and beyond that of the general class of unsecured creditors for those classes of claimants that have a basis for disparate treatment. The Court finds that there is both statutory basis and common law basis for different treatment of the class of creditors entitled to make a claim to all or part of the monies held by the Arizona State Registrar of Contractors. Of that possible class, Ray Lumber is but one claimant.

After considering the briefs submitted, oral argument presented and being fully advised in the premises:

IT IS ORDERED denying the motion for relief from stay filed by Ray Lumber against the Debtor, Legend Homes, Inc.

Pursuant to F.R.C.P. 52 as adopted by Rule 7052 of the Rules of Bankruptcy Procedure, this opinion and order shall constitute findings of fact and conclusions of law in support of this decision.

---

**6.** 712 F.2d 962 (5th Cir.1983).