In re McLEAN TRUCKING COMPANY, Federal ID No. 56–0485391, Debtor.

McLEAN TRUCKING COMPANY, Plaintiff,

v.

The DEPARTMENT OF INDUSTRIAL RELATIONS for the State of California; the Self-Insurers Security Fund; Ronald Rinaldi; Paul Bayer; Arthur Fitzgerald; Theresa Greer; John B. Hulsebus; John C. Wilson; Joseph E. Markey; and Protective Insurance Company, Defendants.

Bankruptcy No. C–B–86–0023.
Adv. No. 87–0040.

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

June 3, 1987.

Joseph B.C. Kluttz and L. Campbell Tucker, III, of Kennedy, Covington, Lodbell & Hickman, Charlotte, N.C., for debtor.

C. Richard Rayburn, Jr., Charlotte, N.C., for Dept. of Indus. Relations for the State of Cal.

Daniel G. Clodfelter and David S. Walls, of Moore & Van Allen, Charlotte, N.C., for Self-Insurers' Security Fund and the individual members of the board of trustees of the Self-Insurers Fund.

Walter W. Pitt, Jr., of Bell, Davis & Pitt, Winston-Salem, N.C., for Protective Ins. Co.

Thomas B. Henson, of Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., for the Committee of Unsecured Creditors.

## MEMORANDUM OPINION AND ORDER

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS MATTER was before the Court on March 4, 1987, upon motion of the Debtor,

McLean Trucking Company, for a preliminary injunction, asking that Defendants be restrained from taking any action to collect upon a surety bond written by Protective Insurance Company as surety for the Debtor and running in favor of Defendant California Department of Industrial Relations.

*Procedural History.* The Debtor initiated this adversary proceeding by filing an unverified complaint and motion for temporary restraining order and preliminary injunction on February 18, 1987. At a hearing on the motion for temporary restraining order, held on February 19, 1987, the Self-Insurers Fund and the individual defendants appeared through their counsel and opposed the issuance of the temporary restraining order. The Department was not represented at that hearing and had not been notified of the filing of the adversary proceeding at the time of the hearing. After hearing argument, the Court entered an order from the bench enjoining the Self-Insurers Fund and the Department from taking any action to proceed against Protective, as surety under a bond issued for the Debtor as principal and running in favor of the Department. The Court granted the temporary restraining order solely to preserve the *status quo* pending hearing on the motion for preliminary injunction, which was scheduled by consent of the parties for March 4, 1987.

After reviewing the pleadings and affidavits of record and considering the briefs and arguments of counsel, the Court has determined that the motion for preliminary injunction should be denied. This memorandum opinion and order is filed to incorporate the Court's findings of fact and conclusions of law in support of its ruling.

*Facts.* McLean Trucking Company is the debtor-in-possession in a Chapter 11 case now pending before this Court. The Debtor is the successor by merger to Delta California Industries, Inc. and Delta Lines, Inc., both of which were trucking firms formerly operating in the State of California (hereinafter collectively referred to as "Delta"). Before the Chapter 11 case was filed, and as permitted by provisions of the California Labor Code, Delta had elected to self-insure for workers compensation claims in California and had qualified for a Certificate of Consent to Self-Insure, issued by the California Department of Industrial Relations. The Department is an agency of the State of California charged with administering and enforcing the workers compensation system for employers doing business in California.

Section 3701 of the California Labor Code requires each self-insured employer to deposit security for its statutory obligations in the form of either a surety bond issued in favor of the Department, cash or marketable securities, or an irrevocable letter of credit in favor of the Department. The amount of the security to be posted by the self-insured employer is determined by the Department, based on periodic audits of the employer's claims and claims experience, and the amount of security required may be increased or decreased from time to time by the Department based on such audits.

Delta chose to comply with its obligations under Section 3701 of the Labor Code by posting with the Department a surety bond written by Protective Insurance Company. As amended from time to time, based on the periodic audits, the principal amount of the surety bond ultimately totalled $6,282,000. The form and content of the bond is established by the California Labor Code and by the Department.

The surety bond posted by Delta and written by Protective contains an absolute and unconditional undertaking on the part of Protective to pay to the Department an amount up to the stated penal sum of the bond in the event of Delta's insolvency or bankruptcy. There is no provision in the bond for payment of any portion of the proceeds of the bond to Delta under any circumstances. In fact, Section 3701(g) of the California Labor Code specifically provides that

> the private self-insured employer loses all right, title, and interest in, and any rights to control, all assets or obligations posted as security ... [for payment of workers compensation claims].

After the Debtor filed its Chapter 11 petition on January 10, 1986, the Department conducted an audit of the Debtor's claims records to determine whether the surety bond then in effect would be sufficient to satisfy the expected workers compensation claims against Delta. The audit disclosed that the Debtor's surety bond would not be sufficient to cover such claims, taking into account not only sums then due but also including reserves required for future benefit payments to be made on known claims. The amount of the shortfall was estimated to be in excess of $1,000,000 and possibly as much as $2,000,000.

Under the California Labor Code, if an audit of a self-insured employer discloses a deficiency in the amount of security posted for allowed and reserved claims and if the employer is unable post additional security or to pay the claims itself due to insolvency, then the Department may require the Self-Insurers Fund, under Section 3743(a) of the Labor Code, to assume the self-insured employer's obligations to administer and pay claims.

The Self-Insurers Fund is a non-profit mutual benefit corporation established in 1984 pursuant to Section 3742 of the Labor Code. It is a membership organization composed of all self-insured employers in California, and it is governed by a self-perpetuating board of trustees. The Self-Insurers' Fund has no permanent employees or staff of its own. The purpose of the Fund is to act as ultimate guarantor of payment for claims against insolvent or bankruptcy self-insured employers, and the creation of the Fund was prompted by the bankruptcy of a large self-insured employer in California in the early 1980's.

Under Section 3743(b) of the California Labor Code, the Self-Insurers Fund, when it is ordered by the Department to assume the obligations of an insolvent self-insured employer, has "the right and obligation to obtain from the security deposit of an insolvent self-insurer the amount of the self-insurer's obligations ... paid or assumed" by the Self-Insurers Fund. If the security posted by the self-insurer is inadequate, the Self-Insurers Fund is authorized to assess other self-insured employers operating in California to cover any deficiency.

In early 1986, after the Department's audit of the Delta claims records disclosed a probable deficiency in the security posted by Delta, the Department ordered the Self-Insurers Fund to assume the Debtor's obligations under the California workers compensation system. Initially, the Self-Insurers Fund administered and paid the workers compensation claims from its own resources and then submitted periodic reimbursement requests to Protective, as surety. The Self-Insurers Fund has now called upon the Department to collect from Protective the full remaining sum available under the surety bond written by Protective and to turnover the proceeds from the bond to the Self-Insurers Fund. The threat that the Department would honor this request has prompted the Debtor to initiate this adversary proceeding and seek a preliminary injunction against any action to collect the proceeds of the bond.

The Debtor's concern for the fate of the surety bond stems from a series of agreements entered into by the Debtor and Protective both before the bankruptcy case was commenced and afterward. As a condition of writing the surety bond for Delta, Protective had obtained a blanket indemnification agreement from Delta, which required Delta to reimburse Protective for any amounts it might be called upon to pay under the surety bond. Protective had further required that this indemnity obligation be supported by a letter of credit issued for its benefit.

Under these pre-bankruptcy agreements with Protective, the Debtor provided an irrevocable letter of credit issued by Citibank, N.A., in favor of Protective in the amount of approximately $21 million. The letter of credit supported not only the Debtor's obligations to Protective in relation to the surety bond posted in California, but also secured a series of other obligations for bonds issued by Protective in other states and for purposes other than satisfaction of workers compensation claims. As the last link in this chain, the

Debtor granted Citibank a security interest in certain of its assets to secure the Debtor's obligation to reimburse Citibank for any amounts Citibank might be required to pay as issuer of the credit.

Almost immediately after the Debtor filed its Chapter 11 case, Protective drew upon the Citibank letter of credit and established a fund from which it periodically drew to reimburse itself for payments made under the various surety bonds it had issued. This fund, representing the proceeds of the Citibank letter of credit, has been referred to by all parties as "the Collateral Fund." After negotiations among Protective, the Debtor and the Creditors Committee at an earlier stage of this Chapter 11 case, Protective and the Debtor agreed upon a procedure governing the manner in which this so-called Collateral Fund would be administered by Protective and the circumstances under which Protective would be entitled to continue to draw from the Collateral Fund. The parties embodied their agreement in a Consent Order which was entered by this Court on August 7, 1986. The Consent Order was intended to provide an orderly procedure for the administration of workers compensation claims, cargo damage claims, and similar claims against the Debtor which were backed by the various surety bonds issued by Protective. It did not purport to resolve any issues concerning the respective rights of the Debtor or Protective in the Collateral Fund, and the parties reserved their rights to contest such questions at a later time.

The Consent Order was entered without notice to the Department or the Self-Insurers Fund and did not purport to bind those parties or determine any of their rights under the terms of the surety bond at issue in this adversary proceeding or under any applicable law. The Consent Order also did not purport to limit Protective's obligations under any surety bond solely to the amounts Protective is able to draw from the Collateral Fund, nor did the Consent Order purport to make any assignment of the Collateral Fund or create any rights in the Collateral Fund for the benefit of the Department, the Self-Insurers Fund or any other third party.

*Contentions of the Parties.* In this adversary proceeding the Debtor seeks a declaratory judgment that the automatic stay of 11 U.S.C. § 362 forbids any action by the Department or the Self-Insurers Fund to collect, in one lump sum, the remaining unpaid balance of the surety bond or to enforce Protective's obligations under that bond or under provisions of the California Labor Code applicable to the issuers of such surety bonds. The Debtor contends that Protective is not obligated under the terms of the surety bond itself or otherwise under California law to pay the entire amount of the bond in one lump sum but is instead required to make periodic payments to the Department and the Self-Insurers Fund only as necessary to fund payments as they are made to individual compensation claimants.

In the event Protective is required to make immediate payment of the balance of the surety bond, the Debtor fears that Protective will then seek to reimburse itself from the Collateral Fund. If the Collateral Fund is depleted by a single, lump sum reimbursement to Protective to offset Protective's payment under the surety bond, the Debtor contends that the investment income earned on the Collateral Fund will be less than if Protective instead made only periodic payments to the Department, with concommitant periodic reimbursement draws against the Collateral Fund. Since the Debtor claims an interest in any surplus remaining in the Collateral Fund, after Protective has satisfied all its obligations under the various surety bonds, it naturally wishes to expand that interest by maximizing the investment earnings generated by the Collateral Fund.

In short, the Debtor contends that if the Department and the Self-Insurers Fund can force payment of the surety bond in one lump sum, then the Debtor will be injured to the extent of the interest earnings which could otherwise have been earned on the funds paid to the Department. Of course, the Debtor acknowledges that at this point in the Chapter 11 case, no determination

has been made as to the relative rights of Protective or the Debtor in any surplus proceeds in the Collateral Fund or any investment earnings from that fund.

Relying largely on the decision of the Fourth Circuit Court of Appeals in *In Re A.H. Robins Company, Inc.*, 788 F.2d 994 (4th Cir.1986), the Debtor argues that any action by the Department or the Self-Insurers Fund against Protective under the terms of the surety bond is, in effect, an action against the Debtor which is stayed by 11 U.S.C. § 362(a)(1), since the effect of such action against Protective will be to trigger Protective's right of indemnity against the Debtor. The Debtor also argues that the surety bond and the Collateral Fund are property of the estate, so that any action by the Department or the Self-Insurers Fund which would lead to a diminution of the Collateral Fund, albeit indirectly, constitutes an act against property of the estate which is stayed by 11 U.S.C. § 362(a)(3). Relying on *Robins*, the Debtor also contends that due to its interests in the Collateral Fund and the disposition of that fund, the Court should exercise its powers under 11 U.S.C. § 105 to stay any action which would have the effect of diminishing the fund.

In response, the Self-Insurers Fund and the Department have advanced several arguments against the issuance of a preliminary injunction. They contend that the surety bond does not constitute property of the estate; that questions concerning the disposition of the Collateral Fund held by Protective are of no concern to them and do not suffice to trigger the application of the automatic stay provisions of § 362 or justify the invocation of the Court's power under § 105; that any action by them against Protective is not an action against the Debtor within the meaning of § 362(a)(1); that their act in calling the surety bond is in any event exempt from the automatic stay by virtue of the provisions of 11 U.S.C. § 362(b)(4); and, finally, that the equities of the parties' positions and the balance of hardships strongly incline in favor of the Department and the Self-Insurers Fund, so as to render any preliminary injunction improper under the standard for such injunctions established in this circuit. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977).

For the reasons discussed in this opinion, the Court will deny the Debtor's motion for preliminary injunction.

*Interpreting A.H. Robins.* Many of the issues raised by this motion are ones of first impression in this district, requiring as they do an interpretation and application of the Fourth Circuit's recent decision in *In re A.H. Robins Company, Inc.*, 788 F.2d 994 (4th Cir.1986). *Robins* involved an attempt by a debtor-in-possession in an ongoing Chapter 11 reorganization case to enjoin multiple state court actions against the debtor's insurer and certain of the debtor's officers and directors. In several state court suits, commenced after the filing of the Chapter 11 petition, plaintiffs allegedly injured by the Dalkon Shield manufactured by Robins sought damages from the debtor's insurer, which would be satisfied from an insurance policy issued on behalf of the debtor. Commenting on this aspect of the Dalkon Shield claimants' suits, the Fourth Circuit noted that, given the number and nature of the Dalkon Shield claims and their relationship to the causes leading to the Chapter 11 petition, the debtor's insurance policy could well be considered "the most important asset of the estate." 788 F.2d at 1001. The Court also observed that the burden of the Dalkon Shield litigation had probably been a precipitating factor in the debtor's institution of reorganization proceedings. 788 F.2d at 996.

Against this backdrop, the issue before the Fourth Circuit was the jurisdiction of the district court to enjoin the post-petition Dalkon Shield litigation, which were filed not against the debtor itself but against the debtor's insurer and its officers and directors. In sustaining the district court's jurisdiction and the propriety of its issuance of an injunction against the maintenance of the suits, the Court of Appeals summarized four grounds "on which the bankruptcy court may enjoin suits against the bankrupt or its assets and property." 788 F.2d at 1003–1004.

The first of these grounds was § 362(a)(1), which stays any action or proceeding "commenced or [that] could have been commenced against the debtor" at the time of the filing of the Chapter 11 proceeding. The Court of Appeals acknowledged that subsection (a)(1) by its own terms affords protection only to the debtor and not to any other parties, citing its decision in *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124 (4th Cir.1983) (the insulation of (a)(1) "belongs exclusively to the debtor in bankruptcy"). However, the Court was willing to consider an "unusual situation" exception, which would extend the protection of § 362(a)(1) to a nondebtor:

> when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and a judgment against the third-party defendant will in effect be a judgment against the debtor.

788 F.2d at 999. Illustrating this exception, the Court referred to a suit against a third party who is derivatively liable and who is entitled to "absolute indemnity" by the debtor on account of any judgment. However, the Court acknowledged that in instances where the third party is "independently liable" to the plaintiff, the automatic stay would not extend to the third party and the "unusual situation" exception would not apply. *Id.* In each of the cases relied upon by the Court in its discussion of this "unusual situations" exception, litigation had been initiated and was pending against the third party at the time the debtor sought and obtained the injunction under (a)(1).

The second basis for an injunction analyzed by the Court was 11 U.S.C. § 362(a)(3). Subsection (a)(3) stays any action to obtain possession or to exercise control over property of the estate. The Court readily acknowledged that the key term in construing this subsection is "property." The Court then held, citing several authorities, that the debtor's insurance policy constituted property of the estate within the meaning of § 541 of the Code, and that litigation against the insurer to collect damages under the insurance policy were thus stayed by the express language of § 362(a)(3).

As a third possible ground for an injunction, the Court discussed 11 U.S.C. § 105, which authorizes the bankruptcy courts to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of" Title 11. The Court was careful, however, to limit the circumstances in which § 105 injunctions may properly issue to circumstances where the injunction is required to "protect the integrity of a bankrupt's estate and the Bankruptcy Court's custody thereof and to preserve to that Court the ability to exercise the authority delegated to it by Congress." 788 F.2d at 1003, quoting from *In re Johns-Manville Corp.*, 40 B.R. 219, (S.D.N.Y. 1984).

The final possible basis for an injunction against the Dalkon Shield cases, cited by the Court without significant elaboration, was the inherent equity powers of the bankruptcy court. The Court did caution that the invocation of these equity powers requires "clear and convincing circumstances outweighing potential harm to the party against whom it is operative." 788 F.2d at 1003.

The *Robins* opinion does not clearly state whether any particular one or combination of these four various grounds were essential to support the issuance of an injunction against the Dalkon Shield suits. Nor does the opinion clearly indicate whether an injunction was *required* in the circumstances, or instead whether an injunction was proper but not compelled. A careful reading of the opinion, however, suggests that no single factor controlled the outcome; instead, the conjunction of several key facts swayed the court in favor of a stay against the Dalkon Shield claimants. First, the hundreds of pending suits against the insurer, as well as key officers and other principals of the debtor, threatened the successful reorganization of the debtor by distracting the efforts and energies of the Debtor from the formulation of a reorganization plan. Second, the opinion unequivocally holds that under applicable law the debtor's insurance policy was an asset in

which the debtor had an interest and was therefore property of the estate. Third, the Court emphasized that the liabilities of the insurer and other co-defendants were derivative and did not constitute independent, direct liabilities to the Dalkon Shield claimants. Fourth, the administration and resolution of the Dalkon Shield claims was one of the most important parts of the debtor's Chapter 11 case, such that piecemeal determination of the liability and damages issues in would have destroyed the bankruptcy court's ability to administer the reorganization proceeding effectively.

This Court does not read *Robins* as standing for any broad principle that actions against third parties who have resulting indemnity claims against a debtor are always subject to the automatic stay or must always be stayed pursuant to the discretionary powers of the court. Indeed, the particular facts of this adversary proceeding well illustrate the variability of the circumstances under which a Court might be called on to consider a stay of an action against a non-debtor party. The contrast between the facts in *Robins* and the facts in this case helps to place *Robins* in proper context.

*Applying A.H. Robins to This Case.* First, although this case was filed under Chapter 11, the case is in fact a proceeding for liquidation, not reorganization. The Debtor is not continuing and does not intend to continue operations, its assets have been largely disposed of, and its remaining employees are engaged not in the business of formulating a plan for the future operation of a reorganized entity but are instead involved in shutting down operations, reviewing claims, and preparing a plan to distribute all the Debtor's assets among its creditors. The Debtor has made no showing that efforts by the Self-Insurers Fund and the Department to proceed against Protective under surety bond would jeopardize the ability of the Debtor's officers and directors to carry out their functions in this Chapter 11 case or would divert the Debtor's energies away from more pressing tasks in the administration of the case.

Second, unlike the situation in *Robins*, the Protective surety bond cannot in any sense be said to be "the most important asset of the estate." The bond runs only in favor of the Department and for the benefit of the Self-Insurers Fund. No other party can claim the proceeds of the bond; no other party is competing with the Self-Insurers Fund and the Department for recourse to the bond and its proceeds. No action to collect the bond will establish any fact which will judicially estop the Debtor in other situations or bar the Debtor from relitigating or contesting any other party's claim.

■ Third, whatever may have been true of the insurance policy in *Robins*, the surety bond in this case is simply not property of the estate within the scope of 11 U.S.C. § 362(a)(3). Section 541 of the Bankruptcy Code provides for the creation of a bankruptcy estate, and defines the property of the estate. In relevant part, § 541 states:

(a) The commencement of a case under Section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

Although the question whether an interest claimed by the Debtor is "property of the estate" is a federal question to be decided by federal law, the bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir.1985); *Matter of Jones*, 768 F.2d 923 (7th Cir.1985). As stated by the Supreme Court in *Butner*:

Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an inter-

ested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a "windfall merely by reason of the happenstance of bankruptcy." The justification for application of state law are not limited to ownership interests.

440 U.S. at 55, 99 S.Ct. at 918 (citations omitted). Here, an inquiry into whether the surety bond constitutes property of the Debtor's estate begins with an analysis of the Debtor's rights under the bond according to the governing law of the State of California.

■ As noted above, the provisions of the California Labor Code which require the posting of security by a self-insured employer, specifically divest the self-insured employer of all right, title and interest in and to the security or its proceeds. A related provision, Section 3744(b) of the Labor Code, establishes the unconditional right of the Self-Insurers Fund to "obtain from the security deposit of an insolvent self-insurer the amount of the self-insurer's compensation obligations...." The surety bond itself creates no right of payment of any of the proceeds of the bond to the Debtor itself under any circumstances.

Because the governing provisions of California law divest the Debtor from all right, title and interest in the surety bond or its proceeds, the Debtor's estate has no legal or equitable interest in the bond. In this case, at least, this conclusion is not altered by the statutory directive that the Department return to a self-insured employer any security deposits which are determined, in the sole discretion of the director of the Department, to be in excess of amounts needed to satisfy compensation claims. Section 3701.3 of the Labor Code provides that:

> The director shall return to a private self-insured employer all amounts determined, in the director's discretion, to be in excess of that needed to assure the administration of the employer's self insuring, including legal fees, and the payment of future claims.

In the abstract, this requirement could be construed to provide a self-insurer with a contingent right or interest which would become property of a debtor's estate. However, the requirement has no application in this Debtor's case due to the finding by the Department, which is not disputed or contested by any evidence of record on this motion, that there is a shortfall in excess of between $1 and $2 million between the amount of the claims against the Debtor and the stated penal sum of the surety bond. Since the estate's interest in property is no greater than the property interest held by the Debtor, *Cross Electric Company, Inc. v. United States*, 664 F.2d 1218 (4th Cir.1981), the Debtor's estate succeeds to no "right, title or interest in," or any right to control the surety bond.

This conclusion—that the Protective surety bond is not property of the Debtor's estate—is supported by numerous decisions under the Bankruptcy Code. In *In re Mansfield Tire and Rubber Company*, 660 F.2d 1108 (6th Cir.1981), the debtor sought a declaration that a cash fund and surety bonds which it posted to secure its obligations under Ohio workman's compensation statute were property of the estate, and thus protected from the collection efforts by the state industrial commission. The Court of Appeals ruled that the surety bonds posted by the debtor were not property of its estate:

> Paying the claims out of ... the posted surety bonds does not result in the enforcement of a money judgment against the debtor or its estate. Mansfield does not, and could not, claim any interest, legal or equitable, in those surety bonds. The continuing administration of the workers' compensation claims will, therefore, have absolutely no effect on the estate of the debtor.

660 F.2d at 1115.*

The decision by the Ninth Circuit applying California law in *In re Buna Painting*

---

* The Court in *Mansfield* also held that the "police power" exception to the automatic stay contained in § 362(b)(4) applied to Ohio's efforts to administer its workers compensation system,

*& Drywall Co., Inc.*, 503 F.2d 618 (9th Cir.1974) also is instructive. In that case, the court denied the trustee's request to bring into the debtor's estate the money owed by a surety on a contractor's license bond.

> The trustee may not compel payment of the penal sums to him because the bonds are not property of the bankrupt. The bankrupt contractors here, as required by the California Business and Professional Code, secured licensing bonds as a precondition to securing contractor's licenses.... Those bonds are essentially third-party beneficiary contracts, the penal sum protecting certain classes of people who are harmed in specified ways in dealing with the contractor. The contractor is never entitled to the penal sum—he never has a property interest in the bonds.

503 F.2d 618 (9th Cir.1974); *accord, Globe Construction Co. v. Oklahoma City Housing Authority*, 571 F.2d 1140 (10th Cir. 1978); *In re Hathaway's Liquidation and Appraisers*, 1 B.R. 189 (Bankr.N.D.Ga. 1979); *In re M.J. Sales & Distributing Company, Inc.*, 25 B.R. 608 (Bankr.S.D.N.Y.1982); *In re Goldsby*, 51 F.Supp. 849 (S.D.Fla.1943).

These authorities establish that a bond posted by a surety to secure the obligations of the debtor does not constitute property of the estate, and that a bankruptcy court lacks jurisdiction to enjoin proceedings to collect on the bond. This conclusion is especially appropriate where, as here, the governing state law expressly divests the debtor of any rights or interests in the bond or its proceeds.

The Debtor here contends that even if the surety bond is not property of the estate an injunction should be granted, because any action to collect from Protective may entitle and cause Protective to proceed against the Collateral Fund, which the Debtor characterizes as an asset of the estate. The Court is not persuaded by this "domino theory" argument. Well-reasoned

including actions taken to realize upon the security posted by the debtor-employer. Because of the disposition of the other issues discussed

precedent has established that even where the issuer of a surety bond or, in similar circumstances, the issuer of a letter of credit has recourse against collateral pledged by a debtor, a court may not enjoin the beneficiary of the bond or the letter of credit from calling the obligation of the issuer. *E.g., In Re M.J. Sales & Distributing Co., Inc.*, 25 B.R. 608 (Bankr.S.D.N.Y. 1982); *Westinghouse Credit Corporation v. Page (In re Page)*, 18 B.R. 713 (D.D.C. 1982); *In re Illinois-California Express, Inc.*, 50 B.R. 232 (Bankr.D.Colo.1985); *Matter of Stanndco Developers, Inc.*, 534 F.2d 1050 (2d Cir.1976).

It should also be noted that notwithstanding the legal deficiencies in the Debtor's "domino theory" of what constitutes property of the estate, there is an undecided issue in this case as to whether the Collateral Fund, from which the Debtor claims Protective will reimburse itself for any payments under the surety bond, is itself property of the estate. That fund consists of proceeds drawn by Protective from the Citibank letter of credit, and the parties have specifically reserved their rights as to whether and to what extent that Collateral Fund could be characterized as property of the Debtor's estate. This Court is not prepared to rule that the automatic stay bars the surety's payment on its bond or the issuer's payment under its letter of credit merely because such payment actualizes the surety's or the issuer's secured claim against the debtor. Indeed, accepting the Debtor's argument would establish precedent enabling every prospective debtor to shield its sureties, guarantors, co-makers, letter of credit banks and similarly situated parties, merely by offering to collateralize the debtor's reimbursement obligation to such third party.

Fourth, no "unusual situation," of the kind noted by *Robins* as an exception to the normal scope of § 362(a)(1), exists in this case. This exception could arguably apply, *Robins* states, to extend the protection of § 362(a)(1) to parties "whose

in this opinion, the Court does not find it necessary to address the § 362(b)(4) exemption.

interests are so intimately interwined with those of the debtor that the latter may be said to be the real party in interest." 788 F.2d at 1001. The *Robins* court acknowledged, however, that this exception would not apply where the non-debtor was "independently liable" along with the debtor.

The surety bond involved in this case recites that Protective is liable as a "surety" up to the stated penal sum of the bond. It is well-established that the liability of a surety to a promisee or creditor is an independent and primary obligation, and not a secondary and derivative obligation.

> While the contract of a surety is, in a sense, accessory or collateral to a valid principal obligation contracted by another person either contemporaneously or previously, his obligation to the creditor or promisee of the principal is said to be direct, primary, and absolute; in other words, he is directly and equally bound with his principal.

*E.g.,* 74 Am.Jur.2d, Suretyship, § 1. As stated by another hornbook authority, "this right [to proceed against the surety] exists independently of any right the creditor may have against the principal." 72 C.J.S., Principal and Surety, § 183. The law of California endorses this principle. In *Impac Imported Parts and Accessories Corp. v. Rattray*, 95 Cal.App.3d 792, 157 Cal.Rptr. 226 (1979), the court stated:

> The creditor is entitled to pursue either the principal or the surety independently, and even a delay in pursuing the principal does not affect the creditor's right against the surety. Actually, it has been held, after a default by the principal, that the creditor may pursue an independent action against the surety without the need of any prior collection effort, by suit or otherwise, against the principal.

157 Cal.Rptr. at 162 (citations omitted).

These authorities establish that Protective's liability to the Department and the Self-Insurers Fund as a surety is independent of any liability of the Debtor itself. This relationship contrasts with the legal relations between an insurer and an insured, as was present in *Robins*. The liability of an insurer exists only to the extent that the insured has incurred a liability; the liability of an insurer derives from the liability of the insured to a claimant. Since *Robins* limits the "unusual situation" exception for expanding § 362(a)(1) to protect non-debtors to exclude circumstances where the debtor and non-debtor are independently liable, the Department and the Self-Insurers Fund cannot be stayed from calling the Surety Bond under § 362(a)(1). *See, Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124 (4th Cir.1983).

Fifth, in considering the issuance of an injunction under the general equitable powers of this Court, whether derived from 11 U.S.C. § 105 or otherwise, the Court is particularly struck in this case by the lack of equity in the Debtor's position. Put another way, in the language typically used to weigh the propriety of a preliminary injunction, the balance of hardships tips strongly in favor of the Department and the Self-Insurers Fund in this case. Even if the Court found some merit in the Debtor's legal analysis of *Robins*, it would be hard-pressed to issue a preliminary injunction here.

The Debtor's sole stake in any issue between the Department and the Self-Insurers Fund, on one side, and Protective, on the other, concerning the surety bond is its expectation of additional investment earnings from maintaining the Collateral Fund intact for as long as possible. This expectation, as noted above, is by no means a certainty even if the preliminary injunction is issued, since the relative entitlements of Protective and the Debtor to any interest earnings on the Collateral Fund is itself an unsettled issue. While the Debtor's desire to maximize the assets available for distribution to its creditors is laudable, it does not sufficiently outweigh the clear harm to the California parties in this case.

The Debtor's security for its obligations as a self-insured employer has already been determined by an audit to be insufficient to pay known claims and provide a sufficient reserve for future payments on those claims. Already, the Self-Insurers Fund faces the prospect of a shortfall which, under California law, it will have to cover

by assessments against other self-insured employers in California. These self-insured employers are not creditors of the Debtor, at least as far as the record shows, and have not by their actions contributed to the situation which led to this Chapter 11 case or to the deficiency in the security posted by the Debtor with the Department.

If the Self-Insurers Fund is permitted to realize upon the surety bond now and then invest the proceeds until they are drawn upon to fund periodic benefit payments, then the earnings on the invested proceeds can help offset the shortfall in the amount of the security posted by the Debtor and can thereby reduce the assessments required from other self-insured employers in California. In this adversary proceeding the Debtor does not contest that the proceeds of the Protective surety bond will eventually be paid over to the Self-Insurers Fund to reimburse the Fund for payment of workers compensation benefits. There is no question of conserving the bond itself for the benefit of the Debtor or its creditors. In sum, the issue relates strictly to the earnings available upon investment of an amount equal to the amount of the bond. As between the self-insured employers who are members of the Self-Insurers Fund and the creditors of the Debtor in this Chapter 11 case, the Court cannot say that the balance of hardships tips decidedly, or even slightly, in favor of the latter.

■ For all of the foregoing reasons, the Debtor's motion for preliminary injunction will be denied. However, in concluding this opinion the Court needs to make clear what issues it has not decided. The Debtor's Complaint contends, among other things, that under the contractual terms of the Protective surety bond, Protective may not be compelled to pay the entire sum of the bond in one lump sum. Additionally, the Debtor contends that Protective is not required under California law to pay any amounts to the Department for administrative costs and expenses if such amounts would cause the total payments by Protective to exceed the stated penal sum of the surety bond. Third, the Debtor seeks in this adversary proceeding to have the Court determine its rights vis-a-vis Protective concerning Protective's ability to reimburse itself from the Collateral Fund and to claim the benefit of interest earned on the Collateral Fund. All these are issues which the Court does not decide in ruling on the present motion.

Although none of the Defendants has specifically argued the point and at the time of the hearing on the motion for preliminary injunction responsive pleadings had not yet been filed by Defendants, the Department and the Self-Insurers Fund have suggested that there are serious jurisdictional issues and questions concerning the propriety of abstention which are raised by the Debtor's request that the Court interpret the terms of the surety bond as a matter of contract law and under the relevant California statutes. The Court has some doubts about its jurisdiction over these matters and, even assuming jurisdiction in the strict sense, about the propriety of addressing issues which arise strictly between the Department and Protective and involve matters of contract construction and interpretation of purely California state law issues. If Protective wishes to raise these questions in another forum, the Court's present ruling does not prevent it from doing so. However, the Court will not address them here.

Likewise, although the Court believes that it may have subject matter jurisdiction over the dispute between the Debtor and Protective concerning the extent of the Debtor's interest in the Collateral Fund held by Protective and the possible entitlement of the Debtor to the interest earnings on that fund, those are questions to be resolved at another time, in this adversary proceeding or elsewhere.

For all the foregoing reasons, IT IS ORDERED that the Debtor's Motion for Preliminary Injunction is denied and that the Temporary Restraining Order previously entered in this adversary proceeding is dissolved, all effective as of March 4, 1987.