In the Matter of John E. LOCKARD
d/b/a J.W.L. Construction, Debtor.

O'MALLEY LUMBER COMPANY,
d/b/a O'Malley Building
Materials, Appellant,

v.

John W. LOCKARD, d/b/a J.W.L.
Construction, Appellee.

No. 88–2529.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1989.

Decided Sept. 5, 1989.

Charles W. Lowe, Davis & Lowe, P.C., Phoenix, Ariz., for appellant.

John A. Weil, Engler, Engler, Weil & Nelson, Yuma, Ariz., for appellee.

Before HUG, HALL and O'SCANNLAIN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This appeal involves issues of the jurisdiction of the bankruptcy court to decide a claim against a contractor's license bond executed by a non-debtor third-party surety, Allied Fidelity Insurance Company ("Allied"), and collateralized with commercial real property of the debtor, John E. Lockard, d/b/a J.W.L. Construction ("Lockard"), where a creditor has commenced a state court action to proceed against the bond prior to the debtor's filing of bankruptcy. The creditor in this case, O'Malley Lumber Company ("O'Malley"), timely appeals an order by which the district court denied O'Malley's appeal from an order of the Bankruptcy Court for the District of Arizona.

The bankruptcy court ruled that O'Malley was collaterally estopped from relitigating a prior state court determination that the surety bond was "property of the estate," as defined in 11 U.S.C. § 541 (1982), and that O'Malley's state court action against Allied was subject to the automatic stay of 11 U.S.C. § 362(a) (1982 & Supp. 1986).[1] The district court agreed with the bankruptcy court's rulings, but also held that O'Malley's failure to object to the Disclosure Statement and Plan of Reorganization, which were filed by Lockard and approved/confirmed by the bankruptcy court in the Chapter 11 proceedings, was an additional reason to deny O'Malley's appeal.

I

On July 24, 1985, O'Malley commenced an action against Lockard and Allied in the Superior Court of Maricopa County, Arizona, seeking to recover under the terms of a surety bond that licensed construction

---

1. At least two subsections of section 362(a) are relevant to decision of this appeal:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a ... proceeding against the debtor....

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

contractors are required by statute, Ariz. Rev.Stat.Ann. § 32–1152 (West 1986 & Supp.1988), to file with the registrar of contractors.[2] The following day, Lockard filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

Upon receiving notice of the bankruptcy filing, O'Malley agreed to dismiss the state court action against Lockard but elected to proceed with its claim against Allied. On October 11, 1985, Superior Court Judge Rebecca Albrecht heard argument and took under advisement Lockard's Motion to Dismiss the Complaint, and O'Malley's Motion for Summary Judgment against Allied.

In an unsigned minute entry order ("MEO") of October 15, 1985, Judge Albrecht denied Lockard's Motion to Dismiss, stayed the state court action as to *both* Lockard and Allied, and declined to rule on O'Malley's Motion for Summary Judgment. Judge Albrecht's MEO, in relevant part, reads as follows:

> The court has reviewed the memoranda filed in support of the Motion to Dismiss and the Motion for Summary Judgment. Based upon the court's review of the matter, *it appears to this court that the surety bond is an asset of the bankrupted estate under the Chapter XI proceedings* and, therefore, this cause of action is stayed as to the insurance company, as well as the defendants individually.

In a further passage from the MEO, Judge Albrecht retained the case on her inactive calendar with the apparent purpose of allowing O'Malley sufficient time to seek and obtain stay relief from the bankruptcy court.

Meanwhile in bankruptcy court, Lockard had filed a Motion for Sanctions or in the Alternative for a Stay Order, which was denied by Judge Ollason after a hearing on October 25, 1985. At Judge Ollason's suggestion, O'Malley filed a motion to lift the stay (Adversary "D") which was denied, after a hearing on January 31, 1986, in a ruling from the bench that was never embodied in a formal written order. During that hearing, Judge Ollason stated that he was denying O'Malley's motion because the issues had been previously determined by the state Superior Court, and because the state court was correct as a matter of law.

Lockard's bankruptcy case proceeded under Chapter 11, and on July 15, 1986, Lockard filed a Disclosure Statement and Plan of Reorganization.[3] Although counsel for O'Malley received copies of the Plan of Reorganization and the Disclosure Statement, they filed no objections and did not appear at the hearings at which these documents were considered. Bankruptcy Judge Sarah Curley entered a written or-

---

2. As a condition precedent to the issuance or renewal of a contractor's license, Arizona requires by statute that contractors such as Lockard make a cash deposit or post a surety bond in the amount of $5000. *See* Ariz.Rev.Stat.Ann §§ 32–1152.A and 32–1152.B. Lockard opted to furnish a surety bond in conformity with section 32–1152.D, which provides:

> The surety bonds shall be executed by the contractor as principal with a corporation duly authorized to transact surety business in this state.

Under the terms of section 32–1152.E, the contractor's license bond at issue in this case is:

> for the benefit of and subject to claims by any person furnishing labor or materials … used in the direct performance of a construction contract involving a residential structure….

Under further provisions of section 32–1152.E, a materialman may file a written claim with the surety, or bring an action at law against the contractor and surety in order to claim against the bond.

3. Section V of the Plan of Reorganization contained a specific provision regarding the contractor's surety bond:

> The consummation of this Plan shall fully release, discharge and exonerate the Debtor's general surety bond filed with the Arizona Registrar of Contractors pursuant to A.R.S. § 32–1152 wherein the Debtor is principal and the surety is Allied Fidelity Insurance Company. No creditor in these proceedings shall hereafter have a claim against said bond or against Allied Fidelity Insurance Company.

On August 29, 1986, Judge Ollason granted Lockard's Motion for an Order Approving the Sale of Real Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363, by which Lockard requested that he be allowed to sell his commercial property with Allied's $5000 lien attaching to the proceeds of the sale. Judge Ollason approved the sale, and ordered that the lien attach and that the sale proceeds be held in an interest-bearing account until the confirmation of the Plan or further order of the court.

der confirming the Plan of Reorganization on February 20, 1987. On February 23, 1987, however, O'Malley filed a timely Motion Requesting Court Stay Entry of an Order Confirming Plan and Alternatively for Reconsideration of Order Confirming Plan. The bankruptcy court has deferred ruling on O'Malley's motion pending resolution of this appeal.

On April 1, 1987, O'Malley sought a status hearing on both its Adversary "D" motion and a motion to lift the stay that had been filed on May 1, 1986 (Adversary "E"). On July 26, 1987, Chief Bankruptcy Judge Mooreman entered an order in which he refused to lift the stay and denied all relief requested in Adversary "E," ruling that O'Malley was seeking to relitigate the same issues Judge Ollason had resolved in Lockard's favor in his "final" order of January 31, 1986.

O'Malley sought review of Judge Mooreman's order in the district court. By order dated April 6, 1988, the Honorable Paul G. Rosenblatt affirmed, ruling that the bankruptcy court correctly gave collateral estoppel effect to the state court's determination that the bond appeared to be an asset of the bankruptcy estate. O'Malley timely appeals from the district court order.

## II

The questions of law presented by this appeal are subject to de novo review. *In re American Mariner Industries, Inc.*, 734 F.2d 426, 429 (9th Cir.1984) (bankruptcy court's conclusions of law are subject to de novo review); *see also In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986) (questions of bankruptcy court's jurisdiction are reviewed de novo). Questions regarding the availability of collateral estoppel and res judicata are also reviewed de novo. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir.1988) (district court ruling on availability of res judicata, both as to claim preclusion and as to issue pre-

clusion, is reviewed de novo). *Compare Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988) (availability of collateral estoppel is a mixed question of law and fact which the Court of Appeals reviews de novo but, if collateral estoppel is available, decision to give preclusive effect is reviewed for abuse of discretion).

## III

■ We must first decide whether the courts below correctly gave collateral estoppel effect to the unsigned minute entry order in which Maricopa County Superior Court Judge Albrecht stated that the bond "appeared" to be property of the estate.[4] Federal courts, including the bankruptcy courts, are required by statute to give full faith and credit to state judicial proceedings. 28 U.S.C. § 1738 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1034 (9th Cir. 1985) (en banc); *In re Gilman*, 59 B.R. 234, 237 (Bankr.D.Ariz.1986). *See also Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). This statutory requirement has been interpreted to mean that a federal court must give a state court judgment the same preclusive effect it would receive in that state. *Migra*, 465 U.S. at 81, 104 S.Ct. at 896. Accordingly, we look to the Arizona law of issue preclusion to decide whether the bankruptcy court erred in giving preclusive effect to the state court determination of the legal status of the surety bond. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379–82, 105 S.Ct. 1327, 1331–33, 84 L.Ed.2d 274 (1985).

■ The general rule of collateral estoppel, or issue preclusion, is stated in section 27 of the Restatement (Second) of Judgments (1982) ("Restatement") as follows:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is

4. We do not decide, however, whether the state court had subject matter jurisdiction to determine whether the bond was an asset of the estate so as to bind the bankruptcy court. *See* 28 U.S.C. § 1334(d). Moreover, this case does

not present a *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) situation, where a party seeks to bind the bankruptcy court to a stipulation in settlement of a state court suit.

essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

The Arizona courts have accepted the general principles set forth in section 27, *see Gilbert v. Bd. of Medical Examiners of Ariz.*, 155 Ariz. 169, 174–75, 745 P.2d 617, 622–23 (Ct.App.1987), and have adopted a test of "issue preclusion" that is very similar to that of the Restatement:

> The elements necessary to invoke collateral estoppel are: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties.

155 Ariz. at 174, 745 P.2d at 622. As the parties have noted, the "final judgment" requirement is somewhat more relaxed for purposes of "issue preclusion" than it is for purposes of "claim preclusion":

> [F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be *sufficiently firm to be accorded conclusive effect.*

Restatement at § 13. The Arizona courts have also indicated their acceptance of the finality principles of the Restatement. *See Tucson Steel Div. v. Industrial Comm'n of Ariz.*, 154 Ariz. 550, 552, 744 P.2d 462, 466 (Ariz.Ct.App.1987).

Whether a judgment is "sufficiently firm" as to be "final" within the meaning of section 13 of the Restatement depends upon consideration of several factors. Preclusion should be refused, for example, where the decision to be carried over is "avowedly tentative." Restatement at § 13 comment g. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, and that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision should be given preclusive ef-

fect. *Id.* The basic test, according to the Restatement, is whether the earlier decision was "procedurally definite," and not whether the court might have had doubts in reaching the decision. *Id.*

As we read it, Judge Albrecht's conclusion that the surety bond was "an asset of the bankrupted estate" was "avowedly tentative" and, therefore, not entitled to preclusive effect. In rendering her decision staying O'Malley's action against both Lockard and Allied, Judge Albrecht seemingly urged O'Malley to seek a redetermination by the bankruptcy court of the section 541 issue. In her stay order, for example, she observed that "a creditor may request the Bankruptcy Court to lift the automatic stay to allow the creditor to pursue a claim in state court against a bankruptcy debtor," presumably on the ground that the automatic stay of section 362 would not extend to O'Malley's action against Allied if the surety bond was *not* "property of the estate." In placing O'Malley's action on her inactive calendar, moreover, Judge Albrecht indicated that she would dismiss without prejudice after 90 days *unless* O'Malley sought and was unable to obtain stay relief or a judgment against Lockard in the bankruptcy proceedings.

Lockard admits that he argued before Judge Albrecht that the bankruptcy court was the appropriate forum in which to obtain a determination of the legal status of the surety bond under 11 U.S.C. § 541. Lockard also acknowledges that he urged Judge Albrecht to stay the state court action so that the parties could seek such a determination from the bankruptcy court. It appears that Judge Albrecht responded favorably to Lockard's arguments by issuing only a tentative ruling, staying the state court action, and retaining jurisdiction until the bankruptcy court could conclusively determine the legal status of the bond.

It also appears that Judge Albrecht's MEO was neither substantively appealable, nor was it issued in appealable form.[5] The

---

**5.** The Restatement recognizes an exception to    the general rule of "issue preclusion" (as stated

Arizona Supreme Court held in *Focal Point, Inc. v. Court of Appeals*, 149 Ariz. 128, 717 P.2d 432 (Ariz.1986), that a minute entry order must meet three requirements to qualify as a "judgment" within the meaning of Arizona Rule of Civil Procedure 58(a)[6]: it must be (1) written, (2) signed by a judge, and (3) filed with the clerk of the court. 149 Ariz. at 129, 717 P.2d at 433. An MEO that does not meet these three requirements is not a separate "judgment," within the meaning of Rule 58(a) and, accordingly, cannot be appealed to the Arizona Court of Appeals. *Apache East, Inc. v. Means*, 124 Ariz. 11, 13–15, 601 P.2d 615, 617–19 (Ariz.Ct.App.1979). There is no dispute in this case that, although her MEO was reduced to writing and filed with the clerk of the court,[7] Judge Albrecht did not sign her MEO. Under the rule of *Focal Point*, Judge Albrecht's MEO does not appear to have been issued in appealable form.[8]

More importantly, however, Judge Albrecht's order was not substantively appealable because it was not "final." Under Arizona law, a judgment is "final" when it "ends the proceedings and leaves no question open for further judicial action." *Theriault v. Scottsdale Enterprises*, 157 Ariz. 77, 78, 754 P.2d 1352, 1353 (Ariz.Ct. App.1987). There can be little doubt that

Judge Albrecht's order was not a substantively appealable "final judgment." She expressly declined immediately to dismiss the action, as Lockard had requested. Instead, she retained the case on her inactive calendar for a period of time sufficient to allow O'Malley to seek and obtain stay relief from the bankruptcy court. Although the parties have not provided this court with information about the current status of O'Malley's state court action, it does not appear that the state court disposed of all claims and parties, leaving no questions open for further judicial action.[9]

Because Judge Albrecht's unsigned, conclusory order was avowedly tentative, as well as technically and substantively unreviewable, we conclude that bankruptcy and district courts erred in giving collateral estoppel effect to the state court determination that the surety bond at issue in this case was an asset of the bankrupted estate.

**IV**

We turn next to O'Malley's argument that the automatic stay of 11 U.S.C. § 362(a)(3) is inapplicable to its state court action against Allied because the contractor's license bond, which was executed by Lockard in favor of the State of Arizona

---

in section 27), where "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action. . . ." Restatement (Second) of Judgments § 28(1). Section 28 sets up a very strict standard for deciding whether the party to be precluded was able to obtain review: the test is whether the party was "disabled as a matter of law from obtaining review by appeal or, where appeal does not lie, by injunction, extraordinary writ, or statutory review procedure." *Id.* at comment a.

**6.** Rule 58(a) provides in relevant part that:

All judgments shall be *in writing and signed by a judge* or a court commissioner duly authorized to do so. The *filing with the clerk* of the judgment constitutes entry of such judgment, and the judgment is not effective before such entry. . . .

(Emphasis supplied). The definition of "judgment" includes "an order from which an appeal lies." Ariz.R.Civ.P. 54(a).

**7.** The *Focal Point* Court explains the filing practices of the superior court of Maricopa County.

149 Ariz. at 129, 717 P.2d at 433. There can be little doubt that Judge Albrect's MEO was properly filed within the meaning of Rule 58(a).

**8.** The Arizona courts have not specifically decided whether the simple failure of the judge to sign a minute entry order, which has been reduced to writing and filed with the clerk of the court, precludes appellate jurisdiction over an appeal from such an order. In its recent Rule 58(a) opinions, however, the Arizona Supreme Court has unequivocally stated the *three* requirements for a "judgment." *See Focal Point*, 149 Ariz. at 129, 717 P.2d at 433; *Mark Lighting Fixture v. General Electric Supply Co.*, 155 Ariz. 27, 30, 745 P.2d 85, 88 (Ariz.1987).

**9.** There is one final factor that weighs against giving preclusive effect to the state court order. Although the parties fully briefed and argued the statutory interpretation issue, Judge Albrecht did not provide any reasoning or analysis to support her conclusion that the bond was "an asset of the bankrupted estate." She did not, moreover, couch her "holding" in terms of the statutory language.

with Allied as surety, is not "property of the estate" within the meaning of 11 U.S.C. § 541. We must also address Lockard's arguments that the stay of section 362 applies whether or not the bond was "property of the estate" within the meaning of section 541.

## A

O'Malley relies primarily on *In re Buna Painting & Drywall Co., Inc.*, 503 F.2d 618, 619 (9th Cir.1974), for the proposition that a contractor's license bond (as opposed to a cash deposit) is not "property of the estate" for purposes of 11 U.S.C. § 541.[10] Although it is the most recent Ninth Circuit authority relevant to this issue, there is some doubt whether *In re Buna* controls this appeal. *In re Buna* was decided under the Bankruptcy Act and dealt with a contractor's license bond required by California law.

O'Malley also correctly asserts, however, that the "overwhelming weight of authority" under both the Bankruptcy Act and Code holds that a contractor has no property interest in a surety bond issued by a third-party to guarantee the contractor's performance on its commercial or personal services contracts. In addition to *In re Buna, see, e.g., In re Mansfield Tire and Rubber Co.*, 660 F.2d 1108, 1115 (6th Cir. 1981) (debtor could not claim any legal or equitable interest in surety bonds); *Globe Construction Co. v. Oklahoma City Housing Authority*, 571 F.2d 1140, 1143 (10th Cir.) (bankruptcy court has no jurisdiction to enjoin in personam action against guarantor of bonds secured by mortgage upon property owned by the debtor), *cert. denied*, 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 131 (1978); *In re Stanndco Developers,*

*Inc.*, 534 F.2d 1050, 1052–53 (2d Cir.1976) (district court in reorganization proceedings had no jurisdiction to enjoin state court action against surety on mechanic's lien release bond); *In re Fintel*, 10 B.R. 50, 51 (Bankr.D.Ore.1981) (section 362 does not stay action against corporate surety bond, which was provided by a debtor as a condition of obtaining Oregon contractor's license, because bond was not "property of the estate"); *In re McLean Trucking Co.*, 74 B.R. 820, 826 (W.D.N.C.1987) (automatic stay inapplicable to action against surety because bond is not "property of the estate").[11] *See also In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983) (automatic stay does not preclude efforts to collect from a bankrupt's guarantors or from their property).

Lockard relies on a single recent bankruptcy court case, *In re Legend Homes, Inc.*, 69 B.R. 797 (D.Ariz.1987), to support his argument that the bond at issue in this case is "property of the estate." In that case, the court decided only that *cash* deposited by a contractor with the Arizona Registrar of Contractors, pursuant to Ariz. Rev.Stat.Ann. § 32–1152, is "property of the estate" within the meaning of 11 U.S.C. § 541. *Id.* at 799–800. Lockard contends that there is no meaningful distinction between a cash deposit made by a contractor, and a license bond executed by a third-party surety and a contractor, for purposes of section 541.

As the court in *In re Legend Homes* itself observed, however, the Ninth Circuit recognizes such a distinction. *Id.* at 799. *Compare In re Buna*, 503 F.2d 618; *with Butler v. Pacific Nat'l Ins. Co.*, 375 F.2d 518 (9th Cir.1967) (funds retained by state of Arizona pursuant to a statute relating to

---

10. "Property of the estate" is defined in section 541(a), in relevant part, as follows:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

11. We note that a thoughtful discussion of surety bonds, and the other bankruptcy law issues

presented by this appeal, can be found in a recent bankruptcy court decision, *McLean Trucking*, 74 B.R. 820, 826–28 (W.D.N.C.1987).

As the *McLean* court observed, the inquiry under 11 U.S.C. § 541 should begin with the question whether *state* law has invested the debtor with any any legal or equitable interests in property as of the commencement of the case. *Id.* (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). Unfortunately, the Arizona courts have not decided a case that answers this question.

public improvement contracts, which required deposit for benefit of unpaid laborers and materialmen, were property of bankrupt highway contractor); and *Kennedy v. Powell*, 366 F.2d 346 (9th Cir.1966) (cash deposited with state treasurer by contractor who later went bankrupt, as condition precedent to state's granting of a contractor's license, was "property" within meaning of former 11 U.S.C. § 110), *cert. denied*, 386 U.S. 910, 87 S.Ct. 858, 17 L.Ed.2d 783 (1967).

As O'Malley contends, there are cogent reasons for retaining the cash deposit/surety bond distinction for purposes of bankruptcy law. In the case of a cash deposit, the contractor puts up his own property to guarantee his performance on commercial or personal services contracts. By contrast, a contractor who instead posts a bond interposes a third-party surety between himself and contract claimants; the surety essentially agrees, in exchange for the contractor's promise of indemnification or, as here, a lien on the contractor's assets, to pay the claims of contract creditors out of the surety's own funds in an aggregate amount up to the limits of the bond in the event of the contractor's breach.

The basic difference is in the party, the contractor or the surety, who puts its property directly at risk of liability to creditors in the event of nonpayment by the contractor. As Lockard himself acknowledges, a fundamental purpose of bankruptcy proceedings is to "throw a blanket of protec-tion on all of the property of the debtor." *See* 8 C.J.S., *Bankruptcy* § 140 (1956). In the usual case it is unnecessary, and would be unfair to creditors, similarly to shelter the property of sureties who have undertaken obligations for the benefit of those creditors.[12]

In keeping with the prevailing authority, we conclude that the surety bond at issue in this case is not "property of the estate," within the meaning of 11 U.S.C. § 541. O'Malley's state court action against Allied is not, therefore, subject to the automatic stay of 11 U.S.C. § 362(a)(3).

**B**

■ Lockard further contends that, regardless of our resolution of the section 541 "property of the estate" issue, the automatic stay of 11 U.S.C. § 362 prohibits O'Malley from proceeding against Allied in state court. Lockard's argument is essentially three-fold: (1) lifting the stay would interfere with the "purposes" of 11 U.S.C. § 362, which are to prevent the dismemberment and facilitate the reorganization of a debtor's estate; (2) the automatic stay applies to non-debtor parties, such as Allied, whose rights and obligations are "inextricably interwoven" with those of the debtor; (3) allowing O'Malley to proceed against the bond would severely interfere with the Bankruptcy Code's policies of promoting an orderly reorganization of the debtor's estate and achieving equality of treatment of similarly situated creditors.[13]

---

12. Allowing creditor access to the bond would directly result in payment to O'Malley out of Allied's funds. The *indirect* effect of allowing such access, however, would be to actualize Allied's security interest in commercial real estate that is undisputedly property of Lockard. This is the so-called "domino theory" discussed by the parties to this appeal. As O'Malley points out, the *McLean* court examined this theory and found it wanting:

"Well-reasoned precedent has established that even where the issuer of a surety bond or, in similar circumstances, the issuer of a letter of credit has recourse against collateral pledged by a debtor, a court may not enjoin the beneficiary of the bond or the letter of credit from calling the obligation of the issuer." [Citations omitted].

74 B.R. at 828.

13. We decline to address in detail the first and third of Lockard's arguments for extending the reach of the automatic stay to preclude O'Malley's action against Allied. With respect to his first argument, we note only that a debtor's estate cannot be "dismembered" by excluding from its coverage a bond in which the debtor himself has no property interest. Lockard does not and, we think, cannot claim that he has any right to receive any payments under the bond. He cannot, after all, have a claim against himself.

As to his third argument, Lockard maintains that the surety bond was required to keep his contractor's license in good standing and, thus, to allow him lawfully to engage in residential construction. *See* Ariz.Rev.Stat.Ann. §§ 32–1132, 32–1151. Because he proposed to continue the residential construction aspects of his business during the bankruptcy proceedings in

The centerpiece of Lockard's arguments seems to be a 1986 decision by the Fourth Circuit Court of Appeals. *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). In that case, the court enjoined multiple post-petition actions against a non-debtor third-party insurer by creating an "unusual situation" exception to the general rule that a stay under 11 U.S.C. § 362(a)(1) is available only to debtors and not to third-party defendants or co-defendants. *Id.* 788 F.2d at 999.[14] The *A.H. Robins* court defined an "unusual situation" as follows:

> "This 'unusual situation,' it would seem, arises when there is *such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant* and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."

*Id.* at 999 (emphasis added). On the other hand, the *A.H. Robins* court limited its exception by excluding from the coverage of the automatic stay those cases in which the third party is "independently liable" to the creditor. *Id.*

Other courts have since recognized the *A.H. Robins* "unusual situation" exception. *See e.g., In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147–48 (5th Cir.1987). We have not explicitly recognized such an exception, and we decline to do so in this case.[15]

Even if we were to adopt the rule of *A.H. Robins*, it is far from clear that Lockard's bankruptcy presents an "unusual situation" warranting a departure from the text of section 362. As the *McLean* court observed, a surety has obligations that are "independent" and primary, not derivative of those of the debtor. 16 Bankr.Ct.Dec. at 147–48, 74 B.R. 820 (citing 74 Am.Jur.2d, *Suretyship* § 1; and 72 C.J.S., *Principal and Surety* § 183). In such a case, the *A.H. Robins* exception simply does not apply. *McLean*, 74 B.R. at 828; *see also In re Bialac*, 712 F.2d at 428–29.

## V

■ Finally, we review the district court's ruling that O'Malley is bound by Lockard's Plan of Reorganization, which provides that no creditor shall have a claim against the bond. Lockard presents an extended discussion of the far-reaching effects of confirmation of his Plan of Reorganization, which contains a provision dispos-

order to generate income with which to pay off his creditors, Lockard contends that the bond was necessary to the effective reorganization of his business. Accordingly, Lockard argues that allowing O'Malley to proceed against the bond would have led to the automatic cancellation of his license. We reject these arguments. Nothing in the Arizona statutes, or in the record of this case, indicates that a payment to O'Malley automatically would have deprived Lockard of his license or would have prevented him from conducting the other parts of his business. *See, e.g.,* Ariz.Rev.Stat.Ann. § 32–1152.F (corporate surety must give 30 days notice to licensee and registrar of contractors before cancelling bond).

14. The *A.H. Robins* court observed that there are "four grounds upon which the bankruptcy court may enjoin suits against the bankrupt or its assets and property." 788 F.2d at 1003–04. In addition to the "exceptional" stay of section 362(a)(1), there was also in *A.H. Robins* clear authority for the propositions that the disputed insurance contract was "property of the estate" of the debtor, and that a stay under 11 U.S.C. § 362(a)(3) was, therefore, also appropriate. 788 F.2d at 1001–02. The insurance contract in *A.H. Robins* was, moreover, the singularly most

important asset in the debtor's estate. *Id.* at 1001.

Lockard does not invoke either of the remaining two grounds mentioned by the *A.H. Robins* court as the basis for the stay in the instant case. The other possible grounds are 11 U.S.C. § 105, which authorizes the bankruptcy courts to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, and "the inherent equity powers of the bankruptcy court." *See* 788 F.2d at 1003.

15. We have previously held that, where judicially cognizable property interests of the debtor are implicated, the automatic stay of section 362(a) may be read broadly to prevent creditors from proceeding in an action that indirectly affects the debtor's property interests. *See In re Bialac*, 712 F.2d at 431–32. We were careful in *In re Bialac*, however, to distinguish those cases which hold that "the automatic stay does not preclude efforts to collect from a *bankrupt's guarantors or from their property.*" *Id.* at 431 (emphasis added) (citing *Globe Construction*, 571 F.2d 1140). The instant case falls into the latter category.

ing of the surety bond at issue in this appeal. He cites both the text of 11 U.S.C. § 1141, and case law interpreting that section, *see e.g., In re Pennsylvania Iron and Coal Co., Inc.,* 56 B.R. 492 (Bankr.S.D.Ohio 1985), as support for his contention that O'Malley is bound by the confirmation order to which it failed to object. Lockard also argues that, even if the surety bond is not "property of the estate" and the bankruptcy court was without jurisdiction to dispose of it, O'Malley is nonetheless barred by the doctrine of res judicata from pursuing a state court action against Allied under the rule of a 1938 Supreme Court case, *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

As Lockard notes, the factual and procedural similarities between *Stoll* and the instant case are striking. In *Stoll,* a district court had approved a plan of reorganization under the terms of which the bonds of a bankrupt corporation had been discharged and the guarantor of the bonds had been released from any liability by cancellation of the guaranty. After commencing a state court action to recover on the guaranty, a bond-holding creditor, who had received notice of the proceedings to approve the plan of reorganization but failed to appear, filed a petition seeking a district court order vacating or modifying the confirmation order which was denied. No appeal was taken from any of the district court's bankruptcy orders.

The Supreme Court held that, *even if* the bankruptcy court did not have jurisdiction to release the guarantor of the bonds, the creditor was barred from bringing the state court action. *Id.* at 177, 59 S.Ct. at 140. The Court's holding was based upon the res judicata effect of the district court's final order rejecting the creditor's jurisdictional arguments and denying the creditor's petition to vacate the confirmation order. *Id.* at 172, 177, 59 S.Ct. at 137, 140.

Unfortunately for Lockard, *Stoll* and the other cases he cites do not control this appeal. The order confirming Lockard's Plan of Reorganization is not "final" because of O'Malley's timely motion for reconsideration which is still pending before the bankruptcy court. *See* Restatement (Second) of Judgments § 13, comment b (the "finality" requirement for purposes of claim preclusion resembles the concept of finality for purposes of appellate review).

The judgment of the district court is REVERSED.