**In re KORA & WILLIAMS CORPORATION, Debtor.**

**KORA & WILLIAMS CORPORATION, Plaintiff,**

**v.**

**C.J. COAKLEY COMPANY, INC., et al., Defendants.**

**Bankruptcy No. 88–41402–PM.
Adv. No. 88A–0237PM.**

United States Bankruptcy Court, D. Maryland.

Nov. 10, 1988.

Nelson C. Cohen, Baltimore, Md., Renee Franklin Hill, for plaintiff.

Patrick M. Pike, Christopher J. Heffernan, Smith, Somerville & Case, Baltimore, Md., for Ins. Co. of North America.

Jack Rephan, Sadur and Pelland, Washington, D.C., for C.J. Coakley Co., Inc.

James J. Tansey, Washington, D.C., for E.C. Ernst, Inc.

Larry Harris, Saul, Ewing, Remick & Saul, Washington, D.C., for Grunde Steel Fabricators.

Gerald I. Katz, Julia A. Crossland, Katz & Stone, Vienna, Va., for Kogok Metal and Roubin and Janeiro.

Christopher M. Kerns, Joseph F. Giordano, Mitchell B. Rosenfeld, McNeily & Rosenfeld, Washington, D.C., for North Carolina Granite Corp.

Mitchell H. Stabbe, Holland & Knight, Washington, D.C., for Opportunity Concrete, Inc.

Herman M. Braude, Michael J. Cohen, Braude & Margulies, Washington, D.C., for Potomac Iron Works, Inc. and Westlind Corp.

Kenneth I. Levin, Michael A. Ceramella, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Dywidag Systems Intern., Inc.

S. Scott Morrison, Lyon & McManus, Washington, D.C., for Westinghouse Elec. Corp.

## DECISION RE MOTION FOR PRELIMINARY INJUNCTION

S. MARTIN TEEL, Jr., Bankruptcy Judge, Sitting by Designation.

Kora & Williams Corporation ("Debtor"), the plaintiff, was the contractor for the Union Station Bus/Parking Garage and Rail Access project in Washington, D.C. The Insurance Company of North America ("INA"), which has intervened in support of the Debtor's position, issued a payment bond, as surety, on behalf of the Debtor, as principal, in connection with the project. The $2.5 million penal sum of the payment bond was the maximum required pursuant to the terms of the so-called District of Columbia Little Miller Act. The Debtor executed an agreement of indemnity in favor of INA for any loss, cost and expense incurred by INA on the bond. After the filing of the bankruptcy case, the Debtor brought this action to enjoin suits against INA on the bond by unpaid subcontractors who performed on the Union Station project. The Debtor asserts that Debtor's principal has been unable to assist in the defense of the various suits and, accordingly, that an injunction is necessary to ensure that the suits are adequately defended such that INA's indemnity claims against the estate reflect the true losses suffered by the subcontractors instead of inflated claims allowed simply because the Debtor's principal is not able to assist in litigation.

## APPLICABLE STANDARDS

■ By reason of *United States ex rel. Central Bldg. Supply, Inc. v. William F. Wilke, Inc.*, 685 F.Supp. 936 (D.Md.1988), the presence of a Little Miller Act bond in this case requires this Court to conclude that 11 U.S.C. § 362(a)(1) of the Bankruptcy Code may not be extended to apply here in the fashion that it was extended in *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). By logical extension, this applies as well to foreclose application of the rationale of *Piccinin* under § 362(a)(3) of the Bankruptcy Code.[1]

Accordingly, if an injunction is to be issued here, it must be issued pursuant to traditional equity standards, as discussed in *Piccinin*, 788 F.2d at 1002–04, either under 11 U.S.C. § 105 or under the Court's inherent equity powers. The Court must first balance the relative hardships to the two parties. *L.J. By and Through Darr v. Massinga*, 838 F.2d 118 (4th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989) (reaffirming the test of *Blackwelder Furn. Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977)). In addition, the public interest is a factor that must be taken into account. *Blackwelder*, 550 F.2d at 195, 196. Finally, the plaintiff must show its entitlement to injunctive relief by clear and convincing evidence. *Piccinin*, 788 F.2d at 1003.

---

1. The Court does not view *Piccinin* as holding that the automatic stay may apply to suits against third parties but only as holding that the policies of the automatic stay may warrant enjoining such suits. The Court in *Central Building Supply* may have viewed *Piccinin* as holding that only the harm to the Debtor need be considered in extending the automatic stay to suits against third parties. In this Court's view, that was not the intent of *Piccinin* and the granting of injunctive relief on any of the theories set forth in *Piccinin* requires consideration of all relevant factors, including the hardship to the plaintiffs suing the third parties.

## APPLICATION TO THE FACTS

On or about June 19, 1987, the Government of the District of Columbia terminated Debtor for alleged defaults in connection with the Union Station project. Before and after the termination, INA and the Debtor received various claims from subcontractors against the Debtor and against INA's payment bond. The claims fell generally into two categories: those which the Debtor agreed were due and payable; and those for which the Debtor felt that valid defenses and, in some cases, counterclaims might exist. INA, as surety, paid those claims that Mr. Steinberg indicated were due and payable and for which no viable defenses existed. With respect to the remaining, contested claims, INA did not make payment. Eventually, twelve claimants, the Defendants herein, filed suit against INA. (To the extent that the Debtor was named as a defendant in those suits, the automatic stay of 11 U.S.C. § 362(a) now applies to bar prosecution of the suits against the Debtor.)

The Debtor's bankruptcy case was commenced by the filing of an involuntary petition for relief under Chapter 7 on or about May 16, 1988. The Debtor withdrew a motion to dismiss the involuntary petition and filed a motion to convert the case to a Chapter 11 case on July 7, 1988.

From the date of the Debtor's voluntary conversion to the current time, numerous applications for authority to examine the Debtor and the Debtor's documents have been filed. As Mr. Ira Steinberg, President of the Debtor, testified before this Court on October 7, 1988, various auditors and attorneys have had, essentially, constant access to the business records of the Debtor. Additionally, Mr. Steinberg has spent considerable time as a deponent pursuant to various Rule 2004 requests. The Creditors' Committee has recently filed a Motion to convert the case to Chapter 7, which the Debtor is defending.

On or about September 14, 1988, INA filed a Complaint for Interpleader in the case and requested expedited hearing on that Complaint. On or about October 19, 1988, the Clerk issued a Hearing Notice scheduling a Pre-trial Conference for December 20, 1988.

On or about September 17, 1988, the Debtor filed its Complaint for Injunction commencing this adversary proceeding.

At a hearing of October 7, 1988, the Court granted the Debtor's Motion for Temporary Restraining Order.

Representatives of INA and INA's attorneys have made requests that Mr. Steinberg meet with INA and its representatives and provide INA with appropriate documentation in support of the Debtor's defenses and counterclaims.

Mr. Steinberg testified that although he believes good faith defenses and/or counterclaims exist with respect to each and every claim of the Defendants in this proceeding, he has been unable to render substantial assistance to INA in establishing and documenting these defenses and counterclaims. Mr. Steinberg's unavailability has been occasioned by the necessity that he be involved on a daily basis in matters related to the Debtor's reorganization, in assisting the Creditors' Committee and its attorneys and auditors in reviewing the Debtor's records, in completing five ongoing construction projects, in attempting to locate additional work for the Debtor, in administering the Debtor's business operations, and, perhaps most importantly, in attempting to move forward with Kora & Williams' claim against the District of Columbia for the improper termination of Kora & Williams on the project. Mr. Steinberg testified that in order to assist INA effectively in defending the payment bond claims at issue herein, in attempting to move forward with the prosecution of Kora & Williams' claim against the District of Columbia and in participating in the Creditors' Committee's investigation, he must deal with some 40,000 documents relating to Kora & Williams' work on the project over a period of 1,100 days performance time. Only one complete set of project documents exists. In addition, Kora & Williams is now down to a "skeleton staff" as a result of its financial difficulties. For these reasons generally, Mr. Steinberg has been unable to review the Debtor's files

himself in order to assist INA in the defense claims, despite his continued belief that valid defenses and counterclaims exist.

Mr. Steinberg's testimony, however, failed to establish that representatives of INA could not themselves go through the records of the Debtor to establish what defenses exist.[2] Mr. Steinberg was not the Debtor's on-site manager at Union Station and did not establish that he will be a necessary witness as to the construction disputes (save perhaps the relatively minor task of authenticating the Debtor's records as their custodian). The Court is not convinced by Mr. Steinberg's testimony that the nature of the disputes would require substantial involvement of Mr. Steinberg in preparation and presentation of INA's defenses. The record is thus not "clear and convincing" that there will be a substantial inability for INA to defend while Mr. Steinberg is devoting his primary energies to other matters in the Debtor's bankruptcy case.[3]

The Court must balance the potential harm to the Debtor against the potential harm to the defendants. The claims in this case concern material and labor furnished as early as 1985. INA's payment bond was given to insure prompt payment of the subcontractors. To delay the adjudication of the defendants' lawsuits and their recovery of judgments that they can enforce against the bond will work to their disadvantage because the bond is not bearing interest. INA has not deposited the funds into an interest-bearing account in the in-

terpleader suit. Moreover, for the subcontractors a provision of interest alone might not adequately compensate for the loss of use of the funds in their ongoing businesses and could defeat the protection of prompt payment the Little Miller Act was designed to insure. Delay could also work to the disadvantage of the subcontractors because of the time already expended in prosecuting their actions. Delay can only result in memories fading as well. While the bond fund may be inadequate to pay all claims, the pending interpleader suit will be the appropriate suit in which to address that concern. The Court in that suit may also determine a means of adjudicating the disputed claims that fairly balances the interests of all parties.

To grant an injunction here would be contrary to the public policy adopted by the Little Miller Act (as a counterpart to the Miller Act) "to foster immediate payment to those supplying government projects in order to prevent financial embarrassment that might result to them from a protracted delay in payment." *United States ex rel. Baruch v. Paul Hardeman, Inc.,* 260 F.Supp. 723, 728 (M.D.Fla.1966). This is an additional factor to weigh in determining this case. *Blackwelder,* 550 F.2d at 195, 196.[4]

## CONCLUSION

The harm to the Debtor in not granting an injunction does not outweigh harm that would be caused to the defendants if an injunction were granted. The public inter-

---

**2.** Indeed, some of the suits present issues requiring no factual development. Defendant Westlind Corporation's suit is an action to confirm an arbitration award and presents only issues of law. *See* 9 U.S.C. § 10. Two of the defendants are concededly owed substantial parts of their claims but the Debtor's suit would even deprive them of seeking judgment as to the undisputed amounts. Another defendant, E.C. Ernst, no longer even makes any claim against INA.

**3.** Most of the construction work the Debtor is now engaged in is substantially completed; the Debtor has been unable to secure bonds for new jobs. Essentially Mr. Steinberg is devoting himself to the claim against the District of Columbia and procedural aspects of the Chapter 11 case. Although these are important, any assistance Mr. Steinberg will have to give to INA is rela-

tively less demanding than if the Debtor were actively engaged in substantial new business.

**4.** In *In re McLean Trucking Co.,* 74 B.R. 820, 828 (Bankr.W.D.N.C.1987), the Court criticized the theory that the Debtor advances here because it "would establish precedent enabling every prospective debtor to shield its sureties, guarantors, co-makers, letter of credit banks and similarly situated parties, merely be offering to collateralize the debtor's reimbursement obligation to such third party." The Court emphasized that a surety bond is an independent and primary obligation. *Id.* at 829. This Court need not decide whether upon a proper factual showing the Debtor's theory would nevertheless have to be rejected under the reasoning of *McLean Trucking.*

est additionally weighs in favor of denial of an injunction. Accordingly, the motion for preliminary injunction must be denied.

An appropriate order will be entered.